Argued and submitted June 23, affirmed August 25, 1980

STATE OF OREGON,
*Respondent,*
*v.*
DARWIN ALLEN WILLIAMS,
*Appellant.*

(No. 10-79-00605, CA 14483)

615 P2d 1183

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Karen H. Green, Assistant Attorney General, Salem, argued the cause for respondent. With her on

the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

**WARDEN, J.**

This appeal is from a conviction of second degree robbery. ORS 164.405. The defendant claims that the trial court erred in denying a motion to suppress physical evidence taken from defendant's person at the time of his arrest.

About 11:22 p.m., on the evening of January 13, 1979, the Grocery Cart Market in Eugene was robbed of about $250, including ten marked one dollar bills from the cash register. The clerk, Patricia Ficker, described the robber in her telephone call to the police, a minute after the robbery, as a white male, age 30, around five foot seven inches tall, weighing 150 to 165 pounds, blond, balding, bearded with extremely bloodshot blue eyes, wearing a gold leather coat and blue pants, and soaking wet. It was raining. Miss Ficker further told the police that the man left on foot, traveling west. The Eldorado Tavern was 300 to 400 yards west of the robbed market and the only establishment within one mile in that direction.

While the description was being given over the telephone, the police dispatcher was simultaneously reading the information over the police radio. Within minutes, police were searching the area around the grocery store. Within 15 minutes after the robbery, two officers entered the Eldorado Tavern. There they saw the defendant. He matched the description broadcast over the police radio. He was still very wet. They approached him and noticed that he was breathing heavily. They asked the defendant to step outside the tavern; he complied. Once outside, one of the officers frisked defendant. The officers discovered a roll of currency in the right front pocket of the defendant's jacket. The currency was subsequently seized, and some of the bills were identified as marked bills from the grocery store cash register.[1] The defense argues

---

[1] The chronology of the arrest incident is somewhat confusing; however, it seems that an initial "pat down" was conducted by one officer, at which time the bills in the pocket were noticed. Thereafter, following another reading of the description of the robber over the police radio, the

that the money was seized as a result of an improper search conducted without probable cause to arrest and that it should have been suppressed.

■ We are satisfied that there was probable cause for the officers to arrest defendant. The combination of the proximity in time to the robbery, the fact the robber had been reported going in the direction of the tavern, the fact that the clothing, hair and other physical description matched, the fact that he had obviously just come out of the rain and was breathing heavily were certainly sufficient to give the police a well-warranted suspicion that they had the person who had robbed the Grocery Cart Market minutes before. *State v. Mickelson,* 18 Or App 647, 526 P2d 583 (1974).

■ Turning to the issue of whether the search was appropriate, we note that this was more than a "stop and frisk" situation. When the officers took the defendant outside and patted him down, he was "arrested," though not officially told as much. ORS 133.005(1) defines arrest as:

> "(1) 'Arrest' means to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging him with an offense. A 'stop' as authorized under ORS 131.605 to 131.625 is not an arrest."

The officers took defendant out of the tavern for the purpose of charging him with the offense. He was under "actual restraint" by the officers and was not free to walk away. He was arrested. *State v Krogness,* 238 Or 135, 146-47, 388 P2d 120, *cert denied,* 377 US 992, 84 S Ct 1919, 12 L Ed 2d 1045 (1964), *State v. Groda,* 285 Or 321, 591 P2d 1354 (1979).

---

other officer present ■ conducted a thorough search after advising the defendant of his rights and placing him "under arrest." It was during the second search that the bills were seized. Shortly after this second search, the defendant was placed in one of the police cars. Miss Ficker arrived moments later and identified defendant as the robber.

■ The search of a person without a warrant is permissible as an incident to a lawful arrest to protect the officers or to avoid the destruction or disappearance of evidence. *State v. Groda, supra,* at 326.

We conclude that the search of the defendant and the seizure of the roll of bills were both lawful. The court was correct in denying the motion to suppress.

Affirmed.